We'll hear from counsel Good morning, may it please the court. My name is Bonnie Baritza. I'm counsel for appellant Stacy Ryan I'd asked to reserve four minutes of my time for rebuttal today. Very well Stacy Ryan has sued streck Inc a company founded by her father the late. Dr Wayne Ryan in which she formerly formerly owned shares until 2012 She's also sued her sister Connie Ryan who is now the current president CEO and a shareholder and director of streck The core allegation of Stacy's complaint was that she was defrauded in the forced sale of her stock in 2012 Had she known what Connie Ryan knew and had she known what Connie Ryan was doing at that time? And in the months and years leading up to that forced sale She would not have agreed to sell her shares to the company on August 22nd 2012 through a separately negotiated stock purchase agreement The district court dismissed the bulk of Stacy's claims in the complaint for one reason The district court believed Stacy could not allege any wrongful act by Connie or streck caused her loss Which is the difference in the value of her shares purchased in August 2012 Versus what we believe the fair market value actually was at that time Based on evidence suggesting that Connie Ryan and officers of streck knew that the value was Substantially more than what they offered and what they ultimately purchased the shares for at that time We believe the district court misunderstood the allegations in the complaint She alleged and it is true that streck was entitled to redeem her shares at a time that it chose But it had to redeem and it had to pay the fair market value of those shares Not just whatever value it put forth in the stock purchase agreement If she had to sell the first half of the case is gone And then we get then we get to whether that the allegations of Fraud or or breach of something in the in the FMA and in the fair market value But but you concentrate you concentrate on she was forced to sell and the district court under the stock purchase agreement and But she she wasn't a shareholder when the stock purchase agreement was signed, right? No forced to sell under the the revised redemption agreement Well, we just had indeed which indeed the company had exercised. It's up. It's it's option or right to compel her to sell That's isn't is that wrong? What's wrong with that? well, we believe that the company in the company and through Through its officers including dr. Ryan as we've alleged in the complaint did not view that as a mandatory redemption by Stacy Ryan, so when we look at the facts that we've alleged in the complaint Question is did the contract give the company the right? To purchase the shares and did they exercise well, we believe that happened before the stock purchase agreement, didn't it? Well, we believe that the the purchase of the shares was effectuated through that stock purchase agreement That was separately negotiated and superseded anything that was set forth in the revised redemption agreement. And then the course Well, we've made The face of the contracts is contrary, isn't it? Well, it's a face. We do this on a facial analysis of the contracts, right? Well, we're here on a motion to dismiss. So I'd agree with that your honor Interpretation of a contract is an issue of law for the court certainly, your honor and so if the if the I Mean you didn't need a stock purchase agreement You needed a valuation of the shares once the company said We're buying them, but that is not how the parties proceeded in this case. They preceded. Dr Ryan as the then CEO of the company offered to the Ryan siblings CC Ryan included Offered to all of them as we've alleged We would we would like to consider buying back all of your shares But if you would like to keep all of your shares, let me know and we'll do that. We'll proceed on that basis So they didn't utilize the The at will I guess option to purchase they modified that through their course of dealing and then We're on 12b6 what paragraph specific paragraphs in the complaint support this view of the party's actions under the contract I would point to the complaints paragraph 34 35 40 through 45 50 through 51 56 and 64 and Those are paragraphs in which Stacy Ryan has alleged her communications with dr Ryan and how dr. Ryan was acting according to this According to the redemption agreements that were in place with all of the Ryan siblings except for Connie Ryan Which is of course something we've alleged that Stacy Ryan did not know the Ryan siblings including Stacy We're operating under the assumption that each and every one of their siblings including Connie Ryan Had the same exact redemption agreements in place and were subject to all of the same redemption obligations So this is a family corporation It was founded by dr Ryan and the only other shareholders at the time besides him were his wife and His his children Stacy Ryan Connie Ryan and their three other siblings well, let me ask you this the stock purchase agreement recites that The company has exercised its right to purchase the shares under the stock redemption agreement And it also goes on to recite that The price being paid under the stock purchase agreement is equal to or greater than what they would have received under the stock purchase agreement So basically, dr. Ryan saying we're going to give you something more than what you're entitled to Is that? recitals incorrect It is based on what we've now discovered and learned and what Stacy Ryan has now been able to allege because it was not It was not fair market value. No, that's not what That's not what the stock purchase agreement says the stock purchase agreement Says well, no the redemption agreement says that the fair market value is going to be determined Pursuant to the valuation by who is a jurist? What's the name of the company's valuation your honor? So Was the price paid equal to or greater than the jurist valuation amount? It was and that was of course essential to the court's finding but we disagree that that's how you read that that portion of the contract the the redemption agreements obligated the company to pay fair market value and I think you can separate and consider that in isolation from anything else in that paragraph Because otherwise you have a company that can rely on Can exercise that discretion I guess on a whim Without any consideration of good faith or fair fairness to the shareholders by knowing that you know A few months from the date of that valuation the company's valuation fair market value Could increase or on the date that you attempt to exercise your option the fair market value Actually has increased from the jurist valuation Appraisal that was conducted a year before and so we would urge the court to read To really focus on that term fair market value, but it's it defines fair market value How can we how can you read it says fair market value was set forth in the most recent valuation prepared by jurist valuation advisors That's the contract she agreed to I mean When when she signed this she knew that there was the possibility that The stock could be going up and that and that there is a increase that I mean that's certainly within the realm of contemplation At the time she signed the agreement wasn't it I? Were not disclosed when she signed that agreement And you know she signed I believe we're talking about the revised redemption agreement and also with this Well right, but not as to the stock purchase agreement and so It was an it was an implementation Well our position is that that was separately negotiated By Stacy Ryan and the attorneys for struck and in the course of those negotiations an essential fact was misrepresented to Stacy Ryan and the stock purchase agreement Apparently the purchase price and the transfer of her shares because they could not get it effectuated without Negotiating the stock purchase agreement and then in order to do Whether they if they did it fine, but why did they have to do it? They had to do it because Stacy Ryan would not sell back her shares But I thought dr. Ryan said take it or leave it. I didn't think there was any negotiation I thought he said I'm giving you up. I'm giving you a little bit of a bump over the valuation and you can either sign the stock purchase agreement and get a little more money, or you can Tender the stock under the stock redemption agreement, but either way you're no longer a shareholder. I Believe he tendered a purchase price. That was the fair market value set forth in the jurist valuation my client Stacy Ryan refused wanted more information From Connie Ryan from the company struck didn't get it Refused to go forth with the sale and then she got pressure from the attorneys for struck To sign this stock purchase agreement and in the course of doing that they told her You ought to sign it all of the Ryan siblings are signing this the the families You know getting ready to give all of their shares back to the company including Connie Ryan that induced Stacy Ryan to accept the deal because she knew that Connie Ryan Was part of the leadership of the company and would have the perfect knowledge about the future plans of the company the value of the shares that the value Represented or allegedly represented in this jurist valuation report was in fact an accurate fair market value Which we've now alleged we have reason to believe that it was not It is alleged I believe your honor she didn't know her sister had voting control I Believe she didn't know we've alleged that she didn't know the machinations of Connie Ryan to put herself How could how could you know? How could she reasonably rely on Connie was going to sell the shares along with the other minority shareholders? If she knew Connie was in head voting control One plus one does not equal three. Well, we've alleged that Connie Ryan was in a leadership position in the company she was part of the succession planning and and Running the company alongside dr. Ryan and did have the insider knowledge Back to the 12b6 factor on page 5 the district court States dr. Ryan sent Stacy a letter June 27 2012 stating streck had purchased Stacy's share Stacy was no longer a shareholder The funds were available and if she did not claim them streck would follow Nebraska's guidelines for unclaimed property Citing paragraph 49, I think of your complaint is that an accurate? It is but then we went on after that allegation to allege that then the attorneys for streck Interacted with Stacy Ryan in order to negotiate that stock purchase agreement. She gave up rights in doing that there You know, there was separate consideration and separate negotiations for that. And so She gave up tag-along drag-along rights to participate in any kind of sale of the company, I guess Her rights as a minority shareholder under the Nebraska law And under the revised redemption agreement, that's correct. Your honor I'm I've run into my rebuttal time. May I reserve the remainder, please? Thank you You Is How's it pronounced Buter? It's Buter. Yes. Thank you. You may proceed. Good morning. Your honors May it please the court counsel? My name is Victoria Buter and I represent the Apple East wreck in this matter. I Think throughout the argument that the court has heard today and throughout the briefing that you have received in connection with this appeal What is clear is Stacy Ryan is simply dissatisfied with the approximately 9.3 million dollars she received in exchange For a gift of shares made to her by her father in the 1980s Why didn't she wait why didn't she wait for the summary judgment? Well, your honor, I think in this particular instance if you look at the actual Allegations in the complaints and the revised redemption agreement that is attached as an exhibit to the complaint It is clear that there is an absolute mandatory redemption clause that exists in the revised redemption agreement There was no decision Then you can then you can negotiate further to eliminate The family feud if you will and put the get the company's ownership Squared away and that produces the stock purchase agreement Now why doesn't that I don't understand how you get it how you just eliminate that in a 12b6 Well, your honor, I think you With as lengthy a complaint as we have here I think you do your honor because Frankly in the district court find this the majority of the allegations in the complaint really have little to do With the with the issue before the court and that is for this one reason Not the issue. You just stated wrong. Okay, you got to deal with that issue the issue The revised redemption agreement Because it has a mandatory As a matter of law because it has the mandatory Repurchase obligation the claims that were brought by Stacey Ryan here all contain a causation element Which require that to the extent there would there were any misrepresentations or omissions? They would have to have been relied upon or caused the damage in other words to take for example the section 10b claim There would have to be a misrepresentation or omission in connection with the purchase or sale of a security Because this revised redemption agreement contained an absolute No, your honor, but there was a there was a 10b5 There was a I'm sorry a 10b claim a rule 10b5 claim and there were several state causes of action Which do all contain a causation element and as a result of that because there was no decision here for miss Ryan to make She had no option. She had no Ability to say no to this the the revised redemption agreement, which has not been challenged The validity of that has not been challenged is something that left her with no discretion She argues a lot about the decisions. She would have made or may have made She says no My share certificates are in my safe deposit box come get them. I'm not giving them to you Now now the company probably has has effective remedies but expensive remedies under Nebraska law to deal with this and relegate her to her minority shareholder dissenting shareholder rights So instead they negotiate Well as you look at the evidence That negotiation is not irrelevant Because the right because she was gonna lose her shares under the RRA it doesn't end the case that's my problem well, your honor, I think the the out the idea of negotiation here is actually inconsistent with what was pled in the complaint because if You look We would submit Action I'm positing is wrong as a matter of law And 49 and in those and actually going into 50 and 51 in those what you see is streck acting entirely consistently with the terms of the revised redemption agreement You see an allegation that streck sent a letter to Stacy informing her Then streck and And they want to move on Correct. They caught a it's not a new deal, but it's a supplemental deal And now she claims that was induced by fraud in In both the price setting and the Getting me to sign it it really Wrong as a matter of law allegation It is if you look at the allegations here So I would respectfully disagree there just because that the stock purchase agreement wasn't a renegotiation. It wasn't a supplement It was essentially essentially effectuating the transfer of the shares pursuant to the exact same terms the streck had set forth She did not she got exactly what dr. Ryan and streck had set forth in the June 19th letter So That's kind of an interesting issue because those tag-along drag-along rights only existed Under the revised redemption agreement and once streck elected to purchase those shares There was nothing there to really give up though. There's there are two provisions two separate provisions With with the contract that was entered at that point She did not and I would also note that there was no sale that took place for those to even come into effect That's not really, you know an issue here because the sale did not happen It's not like she gave something up and immediately the company was sold or anything along those lines and there's no such allegations Along those lines, but when she signed the revised redemption agreement here She absolutely agreed that she the company would be entitled at any time to purchase her shares Upon their request there also interestingly there were there was a put option as well contained in that revised redemption agree Agreement and she did have an opportunity at certain times throughout the years to put the shares to streck if she wanted to so this Wasn't a completely one-sided agreement in any way something I don't understand about the district judge or district court order is There's a section about no we discovered evidence and then motion for a leave to amend the complaint and In it it alleges that for some reason The the Ryan plaintiff appellant, they're all Ryan's Stacy did not receive the valuation until 2016. Is that right? I Don't I don't know when she received the valuation. I know that's what she alleged What we do know is that the price she received was exactly what was contained, but her new allegation is Yes, the price I received is what was in the valuation, but that but that But that her sister Manipulated the numbers. I think this is what the allegation is. She manipulated the financials so that jurors valuation Did not have the correct information upon which to make its evaluation. Is that that is that the essence of her amended complaint? Well that that's where it ended up. Yes, your honor So, you know that that argument was first raised in opposition to strex motion to dismiss and Stacy Ryan alleged She had somehow argued manipulation of the 2011 jurors valuation and the court said no no such allegations were pled and that that's a true statement There were no allegations of manipulation And she did file a motion to alter and amend and a motion to amend her complaint to make that allegation But if you look at what she's alleging, it's a completely unsupported Allegation it is a statement that states that somehow the company gave incorrect information to Jurors valuation in 2011 But she had the newly discovered or alleged newly discovered evidence does not in any way shape or form support such an allegation Rather dramatic difference in the stock price between what she got and what it was in 2014 why isn't why doesn't why isn't it Paul satisfied with the allegation on information and belief? Well, your honor There has to be a reasonable inference drawn from the facts you You did your honor, but think of this a company can increase in value over a two-year period We are your honor is it implausible If you just discover in 2016 that the price you got in 2012 was only three quarters of what it was worth in Conclusion to jump to the fact that that that because the company increased in value it was simply due to misconduct Your honor I don't think we need to hear because at the end of the day Stacy Ryan was not entitled to some kind of fair market value analysis under the revised redemption agreement. I Would respectfully submit she was not You're saying that that that the You you cannot challenge what the company says is that is JVA's honest and legitimate fair market value under these circumstances Under these circumstances when the contract is entered into and it expressly states that the jurist valuation Advisors valuation will govern and that was a contract by the way that Stacy ran pleads she negotiated And then you go out and and and defraud the JVA Calculation and you're you're scot-free because of the way the length contracts worded your honor If there were actual allegations of any kind of action by Strecker Connie that there was something Your honor it's not it's a it's a very broad allegation that certainly does not satisfy Rule 9b or any kind of pleading standard that would suggest that there is a specific Actions that were taken by Streck or Connie Ryan here There are plenty of legitimate reasons that a company could have increased in value over a two-year period a new product goes into the market Additional revenues of 140 million dollars there are plenty of legitimate reasons And I would respectfully submit you can't jump to wrongdoing as a result of the company increasing in value You were successful in cutting off any discovery of JVA By doing this as a 12b 6 your honor We were successful in getting the complaint dismissed because it failed to allege the necessary elements that were required under the law to state a claim You know I actually am my co-counsel for Connie Ryan is going to take the remainder of the time Thank you for your time when you request that the court affirm the district courts opinions. Thank you Mr. Walsh good morning you may proceed. Thank you your honor Larry Welch jr. On behalf of Constance Ryan may it please the court your honors It's a pleasure and an honor to be here Just to follow up We've we've I think it's probably best that I just pick up a little bit with the last question as it relates to this issue With regard to amending and I think this is critical to this in her original allegation There was absolutely no Allegation with regard to manipulation and you have to look back and realize that she first filed this complaint in state court She amended the complaint in state court. We moved to dismiss in state court We set out all the basis causation and the like as it relates to that She then dismissed her court her case in state court We thought because st. Louis Union was so on point that she essentially agreed that she had no cause of action here But then she resurfaced in federal court and filed the same claim even though we had put her on notice with respect to Everything that we were saying and that we've briefed for you here So, I'm sorry We requested that the court take judicial notice and the court took judicial notice of the state court actions citing authority for that proposition And so forth Yeah, we didn't ask him to take Judicial notice of the truth of the matter asserted just with respect to that which she filed in state court So that the court understood that she had many bites at the app No, those are all within the pleadings themselves the actual complaint in state court her amendment in state court our motion to dismiss in state Court and then her filing in federal court That's the same complaint where we file another motion to dismiss on the same grounds We elaborately briefed this and she never moves to amend during that entire period It's encompassed as it relates to the proposition with respect to this notion of amending now once the court came out and said Your case is barred by the doctrine set forth in st Union she then comes back at that point and says well, I would like to amend change horses here and Convince you that there was in fact Manipulation as it relates to the jurors valuation report when that was never an allegation at any point in time and her basis Then of suggesting that she had a right now to amend Because the the standards different once the case is dismissed and she sat on all those rulings your honor The standard is different as it relates to whether or not she has right to amend So she wants to come back and suggest well now I've discovered Manipulation and she does it under rule 59 and under 59 she puts in the fact that there was in fact a 2012 annual valuation which naturally there would be Right No, it was a post dismissal It was not so when Yeah, so I'll go back here so the state court action never gets ruled upon she follows the same action in federal court She never alleges manipulation. She sits we brief this She never requests amendment and then after the court rules Then she requests the right to amend to state manipulation saying that she found new evidence But the only evidence that she suggested that she found your honor was this 2012 Valuation before she had alleged. Hey, there's a huge disparity between the 2011 valuation and the 2014 in the interim she comes back says look I found the 2012 which is after the strike date So it has no bearing and no relevance and absolutely nothing to do with manipulation She has no basis no basis in evidence to suggest manipulation Which means back to your point her whole inference in is is because there's a disparity in valuations that should support my right to claim and accuse Constance Ryan of tampering with a 2011 valuation a 2011 valuation when her shares were called some 11 months later that she had the foresight when she didn't even call him her dad did To go and tamper with the valuation so that her father 11 months down the road could then redeem the shares At a fictitious price because she decided to tamper with the valuation and this is a critical feature here your honors This is a critical feature this redemption agreement Required that these shares be purchased at the jurors valuation Valuation number set forth in that report. This wasn't an opening Opening up a notion of a bunch of folks coming in here and arguing over their opinions as to value This was to get rid of that we as lawyers draft those things for those reasons So we don't have multiple opinions the Shenahan have a different opinion of value. Do they apply different discounts? Do they do well if you have ten different appraisers come in they'll come in with ten different numbers They got rid of all of that with respect to this by having this provision in there that explicitly stated We're going to adopt that valuation number as set forth I Pursuant of the stock purchase agreement. It wasn't the jurors valuation number or was it a higher number? It was the jurors valuation number your honor, and that is also critical and I wanted to point out to you that the recital Messes that up. There's something in the recital Recital says it is equal to or greater exactly But when you look at the actual body of the agreement if you look in section to the purchase price your honor The purchase price for the relevant shares is nine million two hundred and eighty thousand two hundred thirty five The purchase price determined in according to paragraph nine of the redemption agreement So it was paid in accordance with the two thousand and eleven redemption agreement Explicitly per the redemption agreement. There was no negotiation here And by the way, the redemption agreement contemplates once it's called it's closed within 90 days. This was the closing They tried like crazy to get her to close it at first. She rejected eventually she capitulated there was no negotiation here They paid the exact price per the call date, which was June of 2012 which was as explicitly pled she acknowledges it was called in that the the 2011 redemption or the 2011 valuation is the appropriate number She acknowledges all that in her complaint and that's what she was paid She fought it, but she was eventually paid for the closing your time is up. Oh, thank you your honor. I'm sorry You Stacey Ryan was a minority shareholder of this company and she had Rights as a minority shareholder under Nebraska law Connie Ryan and officers of the company owed owed her a duty of the utmost loyalty This is common law in Nebraska Is it brief it is briefed your honor. We have a breach of fiduciary duty claim Redemption situation as well as when a company sold it absolutely does and in fact, I think given that the Given the discretion that struck it was vested alleged Well, I don't understand what statutory right there would be I Think it's it's fiduciary obligations under Nebraska law of the company's officers and directors to the shareholder I'm familiar with corporate minority shareholder, right? You're taught you're talking about Majority minority fiduciary duties and so forth. I'm talking about under Nebraska law and a closely held corporation So that's different than than the than the majority's fiduciary duty to treat the minority fairly. I think what I what I Was trying to point the court to is that Connie Ryan owed a fiduciary duty as a director and officer of the company to Stacy Ryan She had no minority she had no minority show shareholder rights other than the tag-along provisions in the contract We and and what you just stood up and initially said was that was a wrong argument But now it turns out it wasn't you weren't saying that I was trying to get to the point that a shareholder under Nebraska law and a closely held corporation like this company has Is owed fiduciary obligations by the director by the officers of the company and by her fellow shareholders And where I was headed with that is I wanted to I wanted to point the court and now I've run out of time and If I we gave mr. Walsh a couple of minutes We'll give you a couple of minutes and you've probably already addressed his argument but After you finished your point now What about this? He didn't use a parade of horribles argument if we allow this case to go forward Well, what will it do to those people who try to in good faith enter a redemption agreement like this? Hopefully I can answer that question kind of with where I was headed because I had that in mind It's taking me a little bit of time to get there, but I'll do my best here I was going to point to the court to a case called Jordan V Duff and Phelps It's a Second Circuit case and it follows kind of the brief I believe it is in the briefs your honor and it follows it follows kind of the line of cases of the st Louis Union the Toledo case and then the Ayers case And I ought to give you the site just in case it's not in there Okay, it's 815f Certainly your honor. I'm sorry. I miss your site now, but send the letters. So we have it in our files. Certainly. It's 815f 2d 429 out of the Second Circuit and so this is one of the cases dealing with a redemption agreement and an employee who Voluntarily left employment and so triggered some redemption obligations. So the court there held that There were fiduciary obligations owed and how that redemption was exercised and the court said that Even though the redemption agreement provided that the company could add its option Purchase the shares, you know, if they could it was an at-will employee They could fire him and then decide to purchase the shares even in that kind of circumstance the court said That they could not suppose for a second that if he had if he had resigned The firm could have been just fired him with a note saying dear. Mr. Jordan. There will be a lucrative merger tomorrow You've been a wonderful employee, but in order to keep all of the proceeds of the merger for ourselves We're letting you go effective this instant here's your $23,000 for your shares rather than the 600,000 that they would have been had he known that a merger was kind of in the works down the road and So I just offer that to show that I think you know, even if the company here Could truly have just exercised that option at will it had discretion as to the timing when it was going to do it and it knew what the values were Well, I disagree given that that it was essentially superseded by the stock purchase agreement and negotiated separately Was unfair Well, we believe it was I mean we've alleged that that all of that was building up to this Shareholder case fights I've ever seen that's That's what the plaintiff always says. This isn't this isn't I sign an agreement and it ain't fair well, if you look at this it When she was paid nine million dollars and Of course judge Loken always comes it with law and cases and I viewed it Intuitively, this doesn't seem right but you both set your forth your respective positions and we'll have to end the argument It's been thoroughly brief. You will send us a 28 J letter. Certainly your honor Thank both sides for the argument. The case is submitted and we will take it under consideration